IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KIM ANTHONY POLONCZYK,
      Plaintiff,

vs.                               Case No.:  3:15cv15/RV/EMT

TOYOTA MOTOR CORPORATION, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, a non-prisoner proceeding pro se and in forma pauperis, commenced this action by filing a civil complaint (doc. 1).  The court determined that the complaint presented defective allegations concerning the parties' complete diversity, and failed to state a non-frivolous federal claim (*see* doc. 8).  The court thus advised Plaintiff that dismissal for lack of jurisdiction was warranted unless he cured the defective jurisdictional allegations in an amended complaint (*id.*).

      Plaintiff filed an amended complaint, as well as a "Response" to the court's previous order (docs. 9, 10).  However the amended complaint was essentially a verbatim repetition of his initial complaint, and neither the amended complaint nor the Response included sufficient factual allegations to invoke this court's federal question or diversity jurisdiction.  Therefore, the court directed Plaintiff to file an affidavit which included certain information regarding his domicile at the time he commenced this action (*see* doc. 12).  Plaintiff responded by filing two affidavits (docs. 20, 24).  He also filed a second amended complaint (doc. 14).  Plaintiff's factual allegations appear sufficient to invoke the court's jurisdiction.

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N. D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of this action is warranted.

I.      BACKGROUND

In his affidavits, Plaintiff states that at the time he commenced this action, he resided in Florida with the intent to remain in Florida (*see* docs. 20, 24).  He alleges the Defendants are domiciled in California, Alabama, and North Carolina (*see* doc. 14 at 1–2).  In the second amended complaint, which is the operative pleading, Plaintiff alleges that on January 27, 2014, he purchased a 2013 Toyota Scion, manufactured by Defendant Toyota Motor Corporation, from Defendant Doug Sanders, a salesman at Defendant Springhill Toyota (doc. 14 at 3; *see also* doc. 27 at 2–4).[1]  Plaintiff alleges Mr. Sanders convinced him that he would be unable to obtain financing for the vehicle from anyone but the dealership, due to Plaintiff's limited income and lack of credit history (doc. 14 at 1, 5).  Plaintiff alleges during the contract negotiations, the "conspirators" (meaning, Defendants) were made aware that his sole source of income was Social Security Disability, and that he received his disability check at the beginning of each month (*id.* at 5).  Plaintiff alleges he insisted that the due date for his monthly payments be at or as close to the first of the month as possible (*id.*).  He alleges the "conspiracy" refused to provide him with a "coupon book" or "complete payment book with future invoices," for him to use to remit monthly payments (*id.* at 3–4).  He alleges the "conspiracy" misrepresented that an invoice would be sent prior to the due date of each monthly payment (*id.* at 4).  Plaintiff alleges the "co-conspirators" claimed that it would be no problem if Plaintiff sent his payments earlier than the due date (*id.* at 5).  He alleges he "was not able to allow the bill to lay around because he would forget to pay the bill if he did not get to it when his disability check came in the mail" (*id.*).

Plaintiff alleges Mr. Sanders, at the direction of his supervisors, added an optional "service agreement" to the contract, which increased the amount financed by $799.00 (doc. 14 at 1, 6; *see also* doc. 27 at 2–4).[2]  Plaintiff admits, however, that he "felt comfortable" with this term and agreed to the addition of this term to the contract (doc. 14 at 6).  According to the contract, Springhill Toyota, Inc. financed a total amount of $19,677.30 (*see* doc. 27 at 2–4).

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

[2] The copy of the contract submitted by Plaintiff to the court demonstrates that the additional $799.00 was for a "gap contract," which is a debt cancellation contract pursuant to which the creditor agrees to cancel all or part of the debtor's obligation to repay the loan due to an event such as death, disability or involuntary loss of employment.

Plaintiff alleges that also during contract negotiations, Mr. Sanders instructed him to pay Springhill Toyota $200.00 in cash for estimated future road taxes and vehicle registration, and Sanders instructed him to go to the state vehicle registration office and transfer his license plates from his old vehicle to his new vehicle (doc. 14 at 7; *see also* doc. 27 at 7–9).  Plaintiff alleges that when his vehicle registration expired six months later in July of 2014, he was required to pay $127.72 for "vehicle tax" (*see id.*).  He alleges he was required to pay this amount, because the dealership failed to forward the $200.00 payment to the state vehicle registration office (*see id.*). The copy of the contract submitted by Plaintiff demonstrates that the $200.00 cash payment was applied as a down payment and subtracted from the balance due under the contract (*see* doc. 27 at 2–3); therefore, Plaintiff was not deprived of the benefit of the $200.00 cash payment.

Plaintiff alleges Defendant Southeast Toyota Finance failed to send him a monthly statement and payment coupon for his July 2014 payment; therefore, on July 3, 2014, he sent a letter to Southeast Toyota Finance, with his monthly payment and copy of his statement for the previous month (doc. 14 at 1; *see also* doc. 27 at 12–14).  The evidence submitted by Plaintiff to the court shows that he sent his July 3 letter and payment to an address in Mobile, Alabama (*see* doc. 27 at 12–14).  Plaintiff's evidence also demonstrates that the monthly statements from Southeast Toyota Finance <u>clearly and expressly instruct</u>, "All regular monthly payments should be mailed to the CHARLOTTE, NC address shown on the remittance coupon" (*see* doc. 27 at 11).  The address shown on the remittance coupon is Southeast Toyota Finance, P.O. Box. 70832, Charlotte, NC 28272-0832 (*id.*).  In light of Plaintiff's failure to send his payment to the correct address, Plaintiff's monthly statement for August 2014,  reflected a past due amount and a late charge (doc. 14 at 7; *see also* doc. 27 at 16).  Plaintiff alleges he spoke with a representative from Southeast Toyota Finance and was told that the late charge would be removed from his account (*see* doc. 14 at 3; *see also* doc. 27 at 5–6).  He alleges he never received written confirmation that the late charge was removed from his account (*see* doc. 14 at 3, 8).  However, the evidence he submitted to the court demonstrates that the charge was removed from his account.[3]

---

[3] Plaintiff's monthly statement for November 2014 does not reflect any past due amounts, which indicates the late charge was indeed removed (*see* doc. 27 at 11).

Plaintiff alleges Southeast Toyota Finance again failed to send a monthly statement and payment coupon, apparently for the payment due in January of 2015 (*see* doc. 14 at 2, 8; doc. 27 at 10–11).  However, Plaintiff admits he changed his residence from Alabama to Florida in September of 2014, and he admits he intentionally did not notify any Defendant that his address changed (*see* doc. 24; *see also* doc. 16).[4]  Plaintiff further admits that this alleged failure to send a payment coupon "has been resolved" (*see* doc. 27 at 10).

Plaintiff additionally alleges the contract included a service agreement, which provided that he would receive all oil changes and minor service repairs from Springhill Toyota free of charge for the first two years of ownership (doc. 14 at 6).  He alleges he took his vehicle to the dealership for service, and the service manager drove it to the rear of the building and returned 25 minutes later (*id.*).  Plaintiff alleges the service manager advised him that the air pressure in one of the rear tires was low, so he filled it to the proper pressure (*id.*).  Plaintiff states the manager advised that if the tire became low again, Plaintiff should return to the dealership, and the tire would be repaired pursuant to the service agreement (*id.*).  Plaintiff alleges a few days later, he discovered that a fabric panel between the back seat and the rear door was missing (*id.*).  Plaintiff acknowledges that servicing the tire would not have required the service manager to enter the vehicle, yet he speculates that the service manager stole the fabric panel, since that was the only time his vehicle was unlocked out of his presence (*id.*).

Plaintiff alleges that due to the "incident" with the missing monthly statement and the missing fabric panel, he "fears" returning to Springhill Toyota for routine service and minor repairs, and this fear has caused him to incur out-of-pocket expenses for these matters (doc. 14 at 6–7).  He states he "fears for his life from the conspiracy," and "fears the conspiracy will attempt to further destroy his credit worthiness" (*id.* at 6–8).

Plaintiff claims that the "conspiracy" (comprised of Defendants):  (1) deliberately failed to send monthly statements and payment coupons, as allegedly required by the contract, in an attempt

---

[4] In the contract, Plaintiff identified his address as 1956 S. University Blvd., Apt. J142, Mobile, Alabama (*see* doc. 27 at 3–4).  The address that appears on the monthly statements sent by Southeast Toyota Finance is that address (*see id.* at 11).  Each payment coupon provides a place for Plaintiff to indicate a change of address (*see id.* at 11, 14).  Plaintiff admits in documents filed with the court in February and March of 2015, that he did not want Defendants to know his current address (*see* doc. 16; doc. 20 at 2–3)

to force him to default on the contract so they would be able to repossess his vehicle; (2) "extorted" money from him; (3) breached the contract; (4) committed "felony fraud"; (5) made intentional misrepresentations (specifically, that a monthly invoice would be sent to him prior to the due date of each monthly payment) to coerce him to enter the contract; (6) harassed and intimidated him on the telephone by inquiring as to the reason he is not using the routine maintenance program; (7) "bullied" him; (8) "terrorized" him; and (9) "stole" his disability income (doc. 14 at 1–5, 8). Plaintiff states he "remembers well the horrific terrorist acts the mother company's country of the conspiracy performed against the United States at Pearl Harbor with total disregard for human life that forced the use of the Atomic Bomb to end the use of the Kamikaze Pilots by the country of Japan" (*id.* at 3).  He contends Defendants' misrepresenting that a monthly invoice would be sent prior to the due date of each monthly payment constitutes "Racketeering activity" (*id.* at 4).  He alleges the "conspirators" are attempting to cause him to forget to make a payment in order to force him into default so as to "extort" funds from him and repossess the vehicle, in violation of the Rico Act, 18 U.S.C. §§ 1951, 1964(c) (*id.* at 2, 4–5).

Plaintiff requests the following injunctive relief:  (1) "ban" Defendant Toyota Motor Corporation from ever selling another car, truck, or motorcycle in the United States; and (2) "confiscate" all Toyota factories within the United States and "claim" them as possessions of the United States (doc. 14 at 8).  He also requests monetary damages to compensate him for the full contract price of the 2013 Toyota Scion, all future medical expenses, and $186,578,200.00 for "severe traumatical [sic] damages inflicted upon the Plaintiff by the Bullying of the Conspiracy" (*id.* at 8–9).  Plaintiff alleges he will never recover from the "scars" Defendants have inflicted upon him (*id.* at 9).

II.    ANALYSIS

Because Plaintiff is proceeding in forma pauperis, the court may dismiss a claim if satisfied that it is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to

Plaintiff.  <u>Davis v. Monroe Cnty. Bd. Of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id.* (citing Fed. R. Civ. P. 8(a)(2)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678 (quotation and citation omitted).  And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true."  *Id.* at 681 (quotation and citation omitted).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

Plaintiff's second amended complaint includes many legal conclusions couched as factual allegations, which are not entitled to the assumption of truth.  Weeding out those conclusory allegations, the court concludes that the well-pleaded factual allegations fail to plausibly give rise to an entitlement to relief.

Insofar as Plaintiff alleges a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c),[5] relying on fraud as the predicate act, his allegations fail to state a plausible claim.  Section 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant participated in the conduct of an enterprise's affairs "through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Thus, to establish a federal civil RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Williams v. Mohawk Indus. Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (quotation omitted).  In addition, a plaintiff in a civil RICO action must also satisfy the requirements of § 1964(c), namely (1) a showing of an injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation.  Id.; 18 U.S.C. § 1964(c); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

"Racketeering activity" is defined to include specified predicate acts.  See 18 U.S.C. § 1961(1).  In order to prove a pattern of racketeering in a civil RICO case, "a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity."  Am. Dental Assoc. v. Cigna Corp., 605 F.3d 1283, 1290–91 (11th Cir. 2010).  The predicate acts must also be related to each other, such as having the same or similar purposes, results, participants, victims, or methods of commission.  See Design Pallets, Inc. v. GrayRobinson, P.A., 515 F. Supp. 2d 1246, 1256 (M.D. Fla. 2007) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)).  The predicate acts must also be continuous, which can be shown by a series of related acts committed over a substantial period of time.  See Design Pallets, Inc., 515 F. Supp. 2d at 1256; see also Anderson v. Smithfield Foods, Inc., 209 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002) (continuity is satisfied by a closed period of repeated conduct or past conduct posing a future threat, but not by isolated events).  Importantly, the Supreme Court has noted that "requiring" two acts does not mean that two acts will always constitute a "pattern."  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) ("[Two] isolated acts of racketeering activity do not constitute a pattern.").  "The target of [RICO] is thus not sporadic activity . . . .  It is this factor of continuity plus

---

[5] Under RICO there is a private civil cause of action which supplements the government's criminal enforcement ability.  See Goren v. New Vision Int'l, Inc., 156 F.3d 721, 726 (7th Cir. 1998).

relationship which combines to produce a pattern." *Id.* (quoting S. Rep. No. 91–617, p. 158 (1969)); *see also* <u>Cox v. Adm'r U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1397 (11th Cir. 1994) (each monthly pension payment based on defendants' illegal request was a separate, related predicate act).

A plaintiff must also plead a RICO claim with the specificity required in Federal Rule of Civil Procedure 9(b), which sets forth the pleading standard for claims of fraud.  Under Rule 9(b), a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled them; and (4) what Defendants gained by the alleged fraud.  *See* <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (citation omitted). Because fair notice is the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme.  *See id.*, 116 F.3d at 1381 (citing <u>Vicom, Inc. v. Harbridge Merchant Servs., Inc.</u>, 20 F.3d 771, 778 (7th Cir. 1994)). Therefore, in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud.  *Id.* (citations omitted).

Here, the factual allegations of the complaint fail to plausibly show any predicate acts specified in § 1961(1), which amounted to or posed a threat of continued criminal activity.  Even assuming as true Plaintiff's allegations that he did not receive a payment coupon for two monthly payments (July of 2014 and apparently January of 2015), he does not allege, nor do the facts suggest, that he suffered injury to "business or property," as required under § 1964(c).  This leaves only the alleged theft of the fabric panel, however, this isolated act does not support a RICO claim. Plaintiff's allegations fail to state a plausible basis for a civil action under the federal RICO statutes; therefore, his federal claim should be dismissed.

Plaintiff's state tort claims and breach of contract claim, brought under the court's diversity jurisdiction, are also subject to dismissal for failure to state a claim.  To be entitled to damages for breach of contract, a plaintiff must plead and prove the contract, the defendant's breach, and damage to the plaintiff.  *See* 17B C.J.S. Contracts § 909.  Further,

> [b]reach of contract is normally enforced through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.  Breach of contract, misfeasance in the performance of a contractual duty, or negligence in the performance of a contract, can give rise to a tort, if the facts constituting a breach of contract also constitute a breach of duty owed by the

defendant to the plaintiff independent of the contract.  A tortious breach of contract requires, in addition to the breach, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.  Mere nonfeasance, however, even if it amounts to a willful neglect to perform a contract, is not sufficient, although in a case of detrimental reliance, mere inaction may give rise to tort liability.  A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.

86 C.J.S. Torts § 5 (footnotes omitted).

Here, Plaintiff alleges Defendants breached the contract by failing to send monthly statements with payment coupons on two occasions in the past year, once in July of 2014, and the other after he moved from Alabama to Florida.  The copy of the contract submitted by Plaintiff demonstrates that it does not include a term requiring Springhill Automotive, or any Defendant, to send a monthly statement or payment coupon to Plaintiff (*see* doc. 27 at 3–4).  The contract does require, however, that Plaintiff make monthly payments in the amount of $375.95, beginning March 13, 2014 (*see id.*).  Plaintiff's allegations fail to plausibly show that any Defendant breached the contract.

To the extent Plaintiff asserts a tort claim independent of his breach of contract claim, his vague, conclusory allegations that Defendants bullied, harassed, intimidated, and "terrorized" him are insufficient to suggest an intentional wrong, insult, abuse, or negligence on the part of any Defendant that was so gross as to constitute a plausible independent tort.

III.    CONCLUSION

Plaintiff's allegations fail to state a plausible federal claim under 18 U.S.C. § 1964(c), and fail to state a plausible state tort or breach of contract claim.  Therefore, his second amended complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1.    That Plaintiff's second amended complaint (doc. 14) be **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.    That all pending motions be **DENIED** as moot.

3.    That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this <u>27th</u> day of April 2015.


/s/  *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

        **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**